IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KELLY L. LAYES                                                                                          PLAINTIFF

      V.                           Civil No. 2:21-cv-02125-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Kelly L. Layes, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed her application for DIB on January 25, 2018, alleging disability since October 31, 2017, due to scoliosis, arthritis, partial deafness in both ears, and depression. (ECF No. 10, pp. 122, 141, 300-306, 336, 350-351, 380-381). The Commissioner denied Plaintiff's application initially and on reconsideration. (*Id*. at 187-189, 191-192). An administrative hearing was held on August 7, 2019. (*Id*. at 50-92). On September 26, 2019, the Hon. Elisabeth McGee, Administrative Law Judge ("ALJ"), entered an unfavorable decision. (*Id*. at 161-175). The Appeals Council remanded the matter for further consideration on May 28, 2020, with directives to reevaluate Plaintiff's hearing loss, obesity, and residual functional capacity ("RFC"). (*Id*. at

182-184). The ALJ then held a supplemental hearing on September 11, 2020. Plaintiff was present and represented by counsel. (*Id*. at 93-118).

Born in 1965, Plaintiff was 42 years old on her alleged onset date and possessed a high school education. (ECF No. 10, pp. 33, 300, 563). She has past relevant work ("PRW") experience as a license clerk and secretary. (*Id*. at 33, 337, 342-349, 372-379, 434, 477).

On October 20, 2020, the ALJ found that Plaintiff suffered from the following severe impairments: depression; anxiety; anemia; menorrhagia; multiple uterine fibroids with later D&C (dilation and curettage) surgery; scoliosis with prior surgery (fusion); moderate to severe arthritic changes of the lumbar spine; mild to moderate arthritic changes of the bilateral wrists; obesity; and asthma/allergies. (ECF No. 10, p. 23). She concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.). Further, despite Plaintiff's severe impairments, the ALJ found she retained the RFC to perform semiskilled sedentary work, but requiring only occasional stooping, crouching, crawling, and kneeling; frequent handling and fingering bilaterally; no exposure to noise greater than level 3 (office noise); no concentrated exposure to dust, fumes, or other pulmonary irritants; and no exposure to extreme heat. (*Id*. at 25). With the assistance of a vocational expert ("VE"), she then determined there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including clerk typist (DOT # 203362010). (*Id*. at 34).

The Appeals Council denied Plaintiff's request for review on May 20, 2021. (ECF No. 10, pp. 6-11). Plaintiff subsequently filed this action on July 19, 2021. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 13, 14), and the matter is ready for Report and Recommendation.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  20 C.F.R. § 404.1520(a)(4).  The fact finder only considers Plaintiff's age, education, and work experience in the light of her RFC if the final stage of the analysis is reached.  20 C.F.R. § 404.1520(a)(4)(v).

### III.   Discussion

On appeal, the Plaintiff raises several issues, including challenges to the ALJ's step two conclusions and RFC determination.  More specifically, she contends that in opposition to the Appeals Council's ("AC") instructions to reconsider her hearing limitations on remand, the ALJ improperly found her hearing deficit to be non-severe without ordering an audiology consultation.  At step two, a claimant has the burden of providing evidence of functional limitations in support of her contention of disability.  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)).  "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."  *Id*. (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).  The ALJ's consideration of the impairment does not, however, end here.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545.  This requires the ALJ to consider all the claimant's impairments, even those found to be non-severe.  *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p,

(S.S.A. 1996) 1996 WL 37418, *5. Non-severe impairments, when considered in combination with other impairments, may be critical to the outcome of a claim.

The United States Court of Appeals for the Eighth Circuit has also held that a claimant's RFC is a "medical question" that is determined based on "all [the] relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Therefore, an ALJ's RFC determination must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

As previously mentioned, the AC remanded the case back to the ALJ for further consideration of the Plaintiff's hearing impairment, obesity, and RFC. In so doing, the AC made the following findings regarding Plaintiff's hearing impairment:

> The Administrative Law Judge finds the claimant's hearing loss to be non severe at step two of the sequential evaluation process (Decision, page 4). However, the hearing decision later indicates that a consultative examiner noted that the claimant was wearing a hearing aid in her right ear and had an estimated 25% auditory loss, although she was still able to hear normal conversation (Decision, page 11 citing Exhibit 7F, page 4). . . . . The decision does not provide an adequate explanation for why the claimant's hearing loss does not have more than a minimal effect on the claimant's ability to do basic work activities. Further evaluation is needed on remand. (ECF No. 10, p. 183).

The AC directed the ALJ to "[f]urther evaluate the nature and severity of the claimant's alleged hearing loss at step two of the sequential evaluation process (Social Security Ruling 86-8)," and to reconsider the Plaintiff's RFC, which may include requesting additional evidence from medical sources and/or clarification of existing opinions. (*Id*. at 183-184).

On remand, however, the ALJ again concluded Plaintiff's hearing loss was not severe. (ECF No. 10, pp. 23, 164). Records reveal that Plaintiff's hearing loss began in 1971, as a side effect of the anesthesia administered during a lengthy fusion surgery. (*Id*. at 512-517, 607-611, 613-619). In November 2017, a hearing test confirmed bilateral hearing loss, revealing signal to noise ratio ("SNR")[1] hearing loss of 2.5 decibels ("dB") at 75 dB with recognition scores of 100% at 80 dB on the right and 96% at 80 dB on the left. (*Id*. at 525-527).

On April 3, 2018, E. Gunn, a DDS interviewer, conducted a face-to-face interview of the Plaintiff. (ECF No. 10, pp. 332-334). Despite the presence of hearing aids in both ears, the interviewer indicated she had difficulty hearing. Further, during a July 2018 evaluation, Dr. Patricia Walz noted her to be slightly hard of hearing without hearing aids but able to understand when spoken to in loud, low tones. (*Id*. at 562-566, 590-593). The following day, Dr. Chester Carlson documented an approximate 25%[2] bilateral hearing deficit despite the presence of a hearing aid in her right ear. (*Id*. at 568-572, 685-689). He also opined that she could hear normal conversations. And, in January 2019, Dr. James Buie at Mercy Clinic found the Plaintiff to have some hearing deficits, although he did not elaborate further. (ECF No. 10, pp. 613-619).

During the first administrative hearing, in September 2019, the ALJ noted that the Plaintiff did ask to have a question repeated. (ECF No. 10, p. 164). And we note that she experienced some difficulty hearing the questions during the telephonic supplemental hearing on September 11, 2020. (*Id*. at 104, 107).

---

[1] The SNR loss indicates how much louder a speech signal needs to be over the background noise for the listener to understand speech. Hearing Rehab Center, *Hearing Loss and Background Noise*, *at* https://hearingrehabcenter.com/hearing-loss/hearing-loss-and-background-noise/ (last accessed July 11, 2022).

[2] It appears that both Plaintiff and Dr. Carlson misinterpreted her audiogram results, interpreting a 2.5 dB deficit as a 25 dB. This is, however, understandable as the decimal point is quite faint. (ECF No. 10, pp. 525-527).

After considering this evidence, the ALJ proceeded to step five in the sequential analysis, concluding that Plaintiff's hearing loss would limit her exposure to no more than level 3 noise, which is the equivalent of office noise.[3] (ECF No. 10, p. 26). The Plaintiff, however, insists that this restriction is insufficient because her hearing loss has progressed, and her hearing aids interfere with her ability to use headsets. She claims this is the reason she quit her job at the Arkansas State Revenue Office. And we note that the ALJ did conclude she could no longer perform her PRW as a license clerk or secretary. (*Id*. at 33).

Unfortunately, the audiogram results contained in the record fail to explain the significance of the hearing loss noted. (*Id*. 525-527). And while there is no mention of the actual issuance of hearing aids, Plaintiff has indicated that they were prescribed to her when she was five years old. (*Id*. at 568). Doctors have also confirmed that the Plaintiff does indeed wearing hearing aids. Because hearing aids both transmit and receive sound waves, it is reasonable to conclude that they could both interfere with and receive interference from various electronic devices, including headsets. It is for these reasons that the undersigned finds the ALJ should have either recontacted Graham Hearing Services to obtain an explanation of Plaintiff's audiogram results or ordered a consultative audiometry exam. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (holding "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped"). Because she failed to do so, the current record does not contain ample evidence upon which the ALJ could determine Plaintiff's level of hearing impairment. *Finch v. Astrue*, 547 F. 3d 933, 937-938 (8th Cir. 2008) (holding ALJ must not substitute his/her opinion for that of a physician).

---

[3] It appears the ALJ is referring to the 1991 Revised Handbook for Analyzing Jobs' ("RHAJ") classification of level 3 (moderate) hearing restrictions, which allows for exposure to business offices where typewriters are used, department stores, grocery store traffic, and fast-food restaurants at off-hours. RHAJ 12-10, *at* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://skilltran.com/rhaj/rhaj12.pdf (last accessed July 12, 2022).

Plaintiff also contends that the ALJ failed to properly consider her obesity as directed by the AC, despite evidence that her BMI increased from 41.3 at the time of the AC's remand order to 44.77 by June 30, 2020.  (ECF No. 10, pp. 647-649, 868-869).  Int their remand order, the AC reasoned as follows:

> The record indicates that the claimant has been diagnosed with obesity with a body mass index (BMI) as high as 41.3 during the period at issue (Exhibit 19F, page 8). However, the hearing decision does not include an assessment of the claimant's obesity as required by Social Security Ruling 19-2p.  Further consideration is required.  (ECF No. 10, p. 183).

On remand, the AC directed the ALJ to reevaluate the nature and severity of Plaintiff's obesity and what she could still do despite her limitations, as required by SSR 19-2p. (*Id*.).

SSR 19-2p recognizes that the combined effects of obesity with other impairments may be greater than the effects of either impairment considered alone. *See Titles II and XVI: Evaluating Cases Involving Obesity,* SSR 19-2p (S.S.A. 2019).  This is because obesity increases stress on an individual's weight-bearing joints, often contributing to limitations in range of motion in both the skeletal spine and the extremities.  *Id*.  It may also limit or contribute to limitations in the individual's ability to sit, stand, walk, lift, carry, push and/or pull, climb, balance, stoop, and crouch. *Id*.

Records throughout the relevant period refer to the Plaintiff as obese or "heavy-set." (ECF No. 532-534, 548-549, 557-558, 562-566, 631-640, 660-661, 871-873).  She also suffered from scoliosis, for which she underwent fusion surgery in August 1971.  (*Id*. at 512-517, 607-611). Thereafter, she remained in a cast until March 1972, before progressing to a brace.  (*Id*. at 512).

Dr. Carlson conducted a consultative exam in July 2018, noting a mild limp secondary to moderate scoliosis.   (ECF No. 10, p. 571).    X-rays of her lumbar spine showed severe dextroscoliosis and moderate to severe arthritic changes.  Accordingly, Dr. Carlson opined that

8

Plaintiff's scoliosis and pain might limit her ability to lift, walk for prolonged periods of time, and bend.

In November 2018, Plaintiff's primary care physician, Dr. Stephanie Frisbie, referred the Plaintiff to an orthopedist. (*Id*. at 654). On January 8, 2019, orthopedist, James Buie, M.D., noted a good reciprocal gait with a list to the left. (*Id*. at 613-619). She exhibited a plumb line drop of one to two centimeters from the first posterior thoracic spine to the left of the gluteal fold; some hypertension and limitation in her neck; and experienced some referred pain in the lower lumbar area bilaterally and posterior superior iliac on the left. Plaintiff could bend to 90 degrees but exhibited marked flattening of the normal lordosis of the spine. X-rays showed multiple metallic clamps associated with fusion surgery from the T7 to T12 level, and possibly the L1 level; marked kyphoscoliosis to the right mid-lumbar area; a 43-degree curve from the L3-4 level to the T7 level; and straightening with loss of kyphosis of the lumbar spine. Dr. Buie could not rule out the possibility of compression and/or collapse of those vertebrae. While there was good alignment of the lower lumbar curve, the lateral view of the lumbar was unclear. And, although he did not see evidence of spondylolisthesis, his visualization was limited.

On July 15, 2019, Dr. Frisbie completed a medical source statement concluding that Plaintiff's moderate to severe scoliosis would result in limitations to include: the ability to lift less than 10 pounds both frequently and occasionally; sit, stand, and/or walk continuously for less than one hour for a total of 3 hours; the need to elevate her lower extremities; a limited ability to perform postural activities and reach in all directions, handle, finger, feel, and grip; the need to avoid all exposure to cold, fumes, odors, and dusts; and the need to avoid concentrate exposure to extreme heat, wetness, humidity, noise, vibration, and hazards. (ECF No. 10, pp.811-818). Further, Dr. Frisbie indicated Plaintiff would require three or four work breaks, would miss four or more days

of work per month, and could not perform part-time work activities of any nature for more than 10 hours in a 40-hour workweek. (*Id*. at 818).

Although she included obesity in the list of severe impairments at step two, the ALJ made the following specific finding:

> The undersigned also finds a non-severe impairment of obesity. Obesity is found to be a severe impairment when, alone or in combination with another impairment or impairments, it significantly limit[s] the claimant's physical or mental ability to do basic work activity. (SSR 19-2p). The undersigned finds that there is evidence or record to support a finding of obesity; however, it is not severe within the meaning of the Social Security Regulations because the impairment does not significantly limit the claimant's physical ability to do basic work activities, as supported by the medical evidence of record. (ECF No. 10, p. 23).

However, because obesity can complicate other impairments, including scoliosis, the Court finds that the ALJ failed to properly consider the combined effects of Plaintiff's scoliosis status post fusion surgery with a 43-degree curve and obesity. The ALJ is reminded that sitting for long periods can exacerbate back pain/discomfort and increase the frequency and duration of necessary breaks.

Accordingly, the undersigned finds that remand is necessary to allow the ALJ to reconsider the Plaintiff's auditory limitations and the effect her obesity has on her scoliosis. On remand, the ALJ is directed to order an audiometry evaluation, complete with a thorough explanation of its findings, and a consultative orthopedic exam to include an RFC assessment addressing the relationship between Plaintiff's scoliosis, obesity, and her ability to ability to perform work-like tasks on a daily basis.

## IV. Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of July 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE